UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIS SAM, | ) 1:09cv0971 DLB |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

**BACKGROUND**

Plaintiff Lis Sam ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff filed her applications on May 26, 2006, alleging disability since January 1, 2004, due to headaches, stomach pain, tailbone pain, spinal and hip fractures, muscle pain and post

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

traumatic stress disorder ("PTSD"). AR 89-92, 125-132. After her applications were denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 54-57, 59, 68. ALJ Sandra K. Rogers held a hearing on April 21, 2008, and denied benefits on September 2, 2008. AR 7-23, 26-37. The Appeals Council denied review on April 9, 2009. AR 1-4.

Prior to these applications, Plaintiff filed for and received benefits from September 1989 through September 1994, when her disability was found to have ceased. AR 10. Subsequent applications in 1994 and 2004 were denied. AR 10. The 2004 application was denied by an ALJ decision dated May 12, 2006. AR 10.

Hearing Testimony

ALJ Rogers held a hearing on April 21, 2008, in Stockton, California. Plaintiff appeared with her attorney, Shellie Lott. Vocational expert ("VE") Stephen Schmidt also appeared and testified. Plaintiff was assisted by an interpreter. AR 26.

Plaintiff testified that she was 45 years old at the time of the hearing. She was single and lived with her children, mother and siblings. She has no education other than the "GAIN" program, which she attended for one year. AR 29. Plaintiff can only write her name. She understands spoken English "here and ... there." AR 30. She doesn't remember the last time she worked and testified that it has been "quite a while now." AR 30.

Plaintiff explained that she has nightmares about twice a month, when she sees her father and brother come back from the dead. Plaintiff was in labor camps in Cambodia and her nightmares relate to that experience. AR 30. Plaintiff also feels sad and depressed and is fatigued everyday. She takes care of her 19 year old disabled daughter, however. AR 30-31. Plaintiff sleeps about 2 or 3 hours during the day and about 4 or 5 hours at night. She sometimes doesn't eat during the day because of her depression. AR 31-32. Plaintiff also has trouble concentrating and although she watches television, she doesn't know what's going on. AR 32.

Plaintiff hurt her spine and lower back when she fell on a tree stump and "got a low fracture." She has pain and feels numb on the left side from her hips to her foot. AR 32. Plaintiff also has constant headaches. AR 33.

During the day, Plaintiff tries to cook and eat and then rests and watches television. She drives her child to school and drives to the grocery store. AR 33. Plaintiff's mother sometimes helps with cooking because Plaintiff often forgets something. Her siblings help her with chores. AR 33.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience. This person could lift and carry 40 pounds and stand and walk for 6 to 8 hours, with breaks every 2 hours. This person could only perform simple, repetitive tasks. The VE testified that this person could perform the positions of hand packer, cleaner and assembly. AR 34.

If this person was limited to occasional bending, the positions of hand packer and cleaner would be eliminated. AR 35.

Plaintiff's attorney asked the VE to assume that this person was substantially limited in the ability to accept instructions and respond to criticism. The VE indicated that this person could still perform the assembly position. If this person was substantially limited in her interaction with the public, it would not have an impact on the previously identified positions. If this person was absent 3 to 4 times per month, this person could not perform any work. AR 35-36.

Medical Record

Plaintiff saw her treating physician, Seang Seng, M.D., on June 4, 2004, and complained of continuing left knee pain. There was no edema or swelling in the left knee and no crepitation. Range of motion was "quite normal." Dr. Seng diagnosed left knee pain with an unremarkable examination and peptic ulcer disease. Plaintiff was provided with stretching exercises. AR 246.

Plaintiff returned to Dr. Seng on September 3, 2004. He described her as having a history of "known somatization along with chronic pain in the knees and also chronic headache." He also noted that her medications appeared to control her symptoms "quite well." Plaintiff was in no acute distress. Strength on both sides was normal despite Plaintiff's complaints of weakness on the left side. There were no signs of atrophy. Dr. Seng assessed Plaintiff as stable and refilled her medications. AR 244.

In November 2004, Plaintiff received emergency room treatment after she fell onto her buttock and complained of pain. Plaintiff was mildly to moderately tender in the sacrococcygeal junction. The physician described the x-rays as showing a questionable coccygeal fracture, though the x-rays indicated that there was no fracture. AR 158-173.

Plaintiff saw Dr. Seng on November 15, 2004, in follow-up to her emergency room visit. She was in no acute distress, but had tenderness over the coccyx area. There were no bruises, lacerations or abrasions in the area. Plaintiff moved her extremities well and she had good tone and muscle strength. Dr. Seng diagnosed coccygeal pain and constipation. He refilled her Vicodin and ordered x-rays. AR 242.

On November 16, 2004, Plaintiff underwent x-rays of her sacrum and coccyx. The sacrum was normal. The angulation of the coccyx with the sacrum was most likely a normal variant. AR 312.

On December 10, 2004, Plaintiff told Dr. Seng that she continued to have pain in the coccyx area, though it was not as bad. Her examination was unremarkable except for mild tenderness over the coccygeal area. AR 240.

Plaintiff saw Dr. Seng on March 9, 2005, for back pain over her coccyx area. He noted that this issue has been worked up in the past and that x-rays were unremarkable. AR 238. Her examination was normal and Dr. Seng diagnosed chronic back pain and peptic ulcer disease, stable. AR 238.

Plaintiff returned to Dr. Seng on June 9, 2005, after the pharmacy would not refill her Tylenol No. 3 and her headache and back pain worsened. Plaintiff was in no acute distress and her examination was normal. Dr. Seng assessed chronic headache and back pain, stable, and refilled her Tylenol No. 3. AR 197.

Plaintiff saw Dr. Seng on September 8, 2005, for medication refills. She reported that Tylenol No. 3 helped her headaches and helped her function well. Her examination was normal. AR 194.

Plaintiff returned to Dr. Seng on December 8, 2005, for complaints of aches and pains, chronic headaches, fatigue, loss of energy and weight loss. Plaintiff was in no acute distress and

had lost 10 pounds since the last visit. Dr. Seng diagnosed fatigue with weight loss and ordered testing. AR 192.

On March 10, 2006, Plaintiff saw Dr. Seng for complaints of chronic low back pain and chronic headache. Plaintiff reported that her back pain was getting worse and that she was not able to sleep. She was in no acute distress and other than subjective tenderness, there were no findings related to her back. Dr. Seng noted that she had a normal physical and diagnosed chronic headaches, chronic back pain and insomnia. AR 190.

Plaintiff underwent x-rays of her lumbar spine on March 10, 2006. The x-rays revealed small osteophytes. The vertebral height and disc height were normal, there was no osteopenia and the spinal canal was not compromised. AR 198.

In June 2006, Plaintiff began seeing Les Kalman, M.D., and complained mainly of nightmares. She also reported hallucinations of her father. Plaintiff was tearful and crying and was not alert. Her insight was fair. Plaintiff's mood was depressed and her affect was constricted. Dr. Kalman diagnosed PTSD. AR 395-398.

On August 19, 2006, Plaintiff saw Usman Ali, M.D., for a consultive physical examination. Plaintiff complained of low back pain, headaches and radiating knee joint pain. She reported that she fell on a tree trunk a few years ago and sustained a fracture. Plaintiff's examination was essentially normal, though mild back pain was noted and straight leg raising was done up to 40 degrees without pain. Plaintiff also had mild tenderness to epigastric palpation. Motor strength was 5 out of 5 and sensation was intact. Dr. Ali diagnosed low back pain and gastritis versus peptic ulcer disease. He believed that Plaintiff may be able to lift and carry about 40 pounds and could stand and walk for 6 to 8 hours, with breaks every 2 hours. Plaintiff had no restrictions in sitting or climbing, though she may have some difficulty performing repeated bending movements. AR 203-206.

Plaintiff returned to Dr. Kalman on August 20, 2006. She complained of headaches but reported that she was sleeping better. Dr. Kalman diagnosed PTSD and migraine headaches. AR 395.

On September 23, 2006, Plaintiff saw James Scaramozzino, Ph.D., for a consultive psychiatric evaluation.  Plaintiff complained of chronic pain, financial worries, depressed mood, sleep disturbance, no appetite, poor concentration and memory and headaches.  Plaintiff rated her pain at a 10 out of 10, though she did not appear to be in any distress during the evaluation.  Plaintiff also explained that she was worried about how she would survive since her primary income is her daughter's disability benefits and her daughter is turning 18 soon.  Plaintiff reported no formal education and no work outside of the home.  As for her daily activities, Plaintiff reported that she wakes up, eats, showers, takes her medicine and organizes her day around her errands.  She helps get her daughter off to school and goes to her doctor's appointments.  Plaintiff enjoys watching television, talking to family and friends on the phone and taking walks.  AR 207-210.

On mental status examination, Plaintiff's attitude was hopeful about getting some source of regular income once her daughter leaves the home.  Her mood was mildly depressed and her affect was consistent with the information provided.  Plaintiff's sleep was influenced by pain and she described her appetite as variable and influenced by depressive symptoms.  Her intellectual functioning was within the average range and her recent and remote memory were intact.  Plaintiff's fund of knowledge was consistent with her education level and socioeconomic background. Dr. Scaramozzino questioned whether Plaintiff was exaggerating her lack of basic information, such how many eggs are in a dozen.  Her calculation ability was poor and she was not able to perform simple mathematical calculations.  Plaintiff's concentration was within normal limits and she was able to perform a simple three-step command.  Her judgment and insight were within normal limits.  AR 209-210.

Dr. Scaramozzino diagnosed pain disorder associated with psychological factors and a general medical condition (chronic hip pain).  He noted that Plaintiff appeared to "exaggerate symptoms in an attempt to insure that the evaluator understood her level of urgency about feeling frightened about how she is going to survive once her daughter's SSI stops in about six months."  Despite Plaintiff's reported symptoms, she does not appear to be suffering from a major mental disorder and was functioning adequately.  AR 210.

1   He opined that Plaintiff's ability to understand very short and simple, as well as detailed,
2   instructions was good. Her ability to maintain concentration and attention was good. Her ability
3   to accept instructions from a supervisor and respond appropriately was good to fair, influenced
4   by her lack of ability to speak English. Her ability to sustain an ordinary routine without special
5   supervision was good, and her ability to complete a workday/workweek was good to fair, as she
6   felt inadequate because of her inability to speak or understand English. She had a good ability to
7   interact with coworkers and her ability to deal with various changes was good, if she had the
8   appropriate skill set to feel comfortable in a work setting. The likelihood of emotional
9   deterioration was minimal to fair, as Plaintiff feels inadequate to perform work tasks since she
10  has never worked outside the home. AR 211.

11   X-rays of Plaintiff's cervical spine taken on October 12, 2006, were normal. AR 310.

12   In December 2006, Dr. Kalman described Plaintiff as stable. Plaintiff reported that she
13  was sleeping better. Dr. Kalman diagnosed PTSD and migraine headaches. AR 393.

14   Plaintiff returned to Dr. Seng on January 10, 2007, and reported that she was stable on her
15  medication for gastroesophageal reflux disease ("GERD"). She had no other complaints. Dr.
16  Seng told Plaintiff that her cervical spine x-rays were normal, and she was "quite pleased." AR
17  220.

18   Plaintiff saw Dr. Kalman on March 10, 2007. She complained of headaches and denied
19  suicidal thoughts. Dr. Kalman diagnosed PTSD and increased her medications. AR 392.

20   On April 17, 2007, State Agency physician S.V. Reddy, M.D., suggested that the ALJ
21  adopt the prior ALJ's finding that Plaintiff's physical impairments were not severe. AR 351.

22   On May 15, 2007, State Agency physician A.H. Middleton, Ph.D., completed a
23  Psychiatric Review Technique form. He opined that Plaintiff did not have a severe mental
24  impairment. AR 352.

25   Plaintiff saw Dr. Seng on September 6, 2007, and reported that her chronic headaches
26  were controlled with medication. Dr. Seng noted that her headaches were stable. AR 383.

27   On September 23, 2007, Plaintiff returned to Dr. Kalman and indicated that she was still
28  depressed. Dr. Kalman diagnosed PTSD and major depressive disorder. AR 391.

Plaintiff saw Dr. Kalman on February 9, 2008, and complained of numbness in her left arm, headaches, low energy and a poor appetite. He diagnosed PTSD and major depressive disorder and increased her antidepressant. AR 390.

Plaintiff returned to Dr. Seng on February 28, 2008, and complained of chronic pain and chronic headache. Plaintiff was in no acute distress. Dr. Seng diagnosed GERD, stable, and chronic headache and pain. Her medications were refilled. AR 377.

On April 2, 2008, Plaintiff saw Dr. Kalman and complained of problems sleeping, nightmares and sweating. Plaintiff reported suffering from depression related to her experiences in Cambodia. On mental status examination, Plaintiff was alert and oriented to person, place and situation. She did not know the date and her memory was impaired. Plaintiff could not add, subtract or multiply. Her abstract thinking was intact and her judgment was fair. Plaintiff's mood was depressed and her affect was constricted. "Neuro vegetative" signs included insomnia, anorexia with 10 pound weight loss, anhedonia, decreased energy, and feelings of hopelessness, helplessness and worthlessness. AR 368-370.

Dr. Kalman diagnosed PTSD and major depression. He noted that Plaintiff did her own cooking, shopping and housekeeping. She also managed her transportation and payed her bills. Plaintiff was able to care for her personal hygiene and get along with family. During a typical day, she stays with her daughter, watches television and cooks. Dr. Kalman also indicated that medication has helped her "to some extent." He did not expect Plaintiff's condition to improve significantly in the next 12 months. AR 370-371.

Also on April 2, 2008, Dr. Kalman completed a Medical Source Statement. He opined that Plaintiff was mildly limited in her ability to remember locations and work-like procedures, and understand, remember and carry out very short instructions. Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions. Plaintiff was mildly limited in her ability to maintain concentration, persistence and pace, sustain an ordinary routine without special supervision, work in coordination with or proximity to others, make simple work related decisions and complete a normal workday/workweek. She was mildly limited in her ability to interact appropriately with the general public, ask simple questions or request assistance

from supervisors and maintain socially appropriate behavior. Plaintiff was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. Plaintiff was not the type of individual for whom a routine, simple, entry-level position would serve as a severe stressor. She would likely be absent 3 times per month. Dr. Kalman believed that these limitations have been present since 2000 and that they would continue for the next 12 months. AR 373-376.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of depression and PTSD and depression. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, though limited to jobs involving simple, repetitive tasks. With this RFC, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 13-22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (depression and PTSD) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) had no past relevant work; but (5) retains the RFC to perform a significant number of jobs. AR 13-22.

Here, Plaintiff contends that (1) the Commissioner failed to file a complete administrative record; (2) the ALJ erred in finding that she had no physical limitations; (3) the ALJ erred in rejecting the opinion of Dr. Kalman; and (4) the ALJ failed to sustain the burden at step five.

**DISCUSSION**

A.  Administrative Record

Plaintiff first argues that the Commissioner failed to file a complete administrative record, as required by 42 U.S.C. § 405(g). Specifically, she contends that because the ALJ cited

and adopted portions of the May 16, 2006, administrative decision, the Commissioner should have included the medical records upon which the 2006 decision was based. Plaintiff argues that this "incomplete record" does not permit meaningful judicial review.

Section 405(g) provides that the Commissioner "shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based." This requirement, however, does not support Plaintiff's position. The May 16, 2006, decision became final when Plaintiff failed to appeal the decision to the Appeals Council. 20 C.F.R. § 404.955(a). A discussion during the current hearing indicates that Plaintiff did not request review and although she may have intended to, she filed the instant application instead. AR 36. Regardless, the prior ALJ decision is now final and entitled to res judicata. *Lyle v. Sec. Health & Human Serv.*, 700 F.2d 566, 568, n. 2 (9th Cir. 1983).

Plaintiff argues that denying her the right to examine the prior medical records is akin to a denial of due process. Reply, at 2. Yet Plaintiff, who was represented by counsel, *did* have an opportunity to examine the medical records during the *prior* administrative proceeding. Allowing prior medical records to be exposed to another round of questioning would eviscerate the principles of res judicata.

Moreover, res judicata allows for certain exceptions. In the social security context, a previous finding that a claimant is not disabled creates a presumption of continuing nondisability. *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). An ALJ's finding of nondisability creates "a presumption that [the claimant] continued to be able to work after that date." *Id.* To overcome this presumption, the claimant must prove "changed circumstances" indicating a greater disability. *Chavez v. Bowen*, 844 F.3d 691, 693 (9th Cir. 1988); Acquiescence Ruling ("AR") 97-4(9). For example, a change in age status after the first determination is a changed circumstance sufficient to rebut the presumption of continuing nondisability. *Chavez*, 844 F.3d at 693. Changed circumstances also include an increase in the severity of the claimant's impairment, the alleged existence of a new impairment, or a change in the criteria for determining disability. AR 97-4(9).

1    Here, the ALJ found the existence of changed circumstances based on the loss of
2 Plaintiff's past relevant work.  The ALJ therefore had to determine if any of the prior ALJ's
3 findings should be adopted.  In doing so, the ALJ analyzed the evidence relevant to this
4 application, all of which was provided in the record.

5    Plaintiff's argument is without merit.

6 B.    Physical Limitations

7    Plaintiff next argues that the ALJ erred in finding that her back pain and headaches were
8 not severe physical impairments.

9    "An impairment ... may be found not severe only if the evidence establishes a slight
10 abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v.*
11 *Barnhart*, 433 F.3d 683, 686 (9th Cir.2005) (internal quotation omitted).  The Commissioner has
12 stated that "[i]f an adjudicator is unable to determine clearly the effect of an impairment or
13 combination of impairments on the individual's ability to do basic work activities, the sequential
14 evaluation should not end with the not severe evaluation step." *Id.*; SSR 85-28.  Step two, then,
15 is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80
16 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe
17 impairment or combination of impairments only when his conclusion is "clearly established by
18 medical evidence."  SSR 85-28.

19    In her decision, the ALJ considered Plaintiff's physical complaints, including back pain
20 and headaches.  She reviewed the treatment notes of Dr. Ali, Dr. Scaramozzino, Dr. Seng and Dr.
21 Kalman, as well as the opinion of the State Agency physician.  AR 13-15.  ALJ Rogers
22 concluded that "[d]espite the opinion of Dr. Ali, the claimant had not established the existence of
23 a new medically determinable physical impairment, or worsening of an existing physical
24 impairment."  AR 16-17; *Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir. 1988) (even where
25 claimant has rebutted the presumption of continuing non-disability, the ALJ's individual findings
26 are entitled to res judicata absent the existence of new and material evidence on the issue.).

27    Plaintiff believes that this finding was incorrect because objective evidence supports her
28 claims of back pain and headaches.  For example, Plaintiff points to a March 2006 lumbar spine

x-ray that showed small osteophytes. AR 198. She also cites Dr. Ali's straight leg raising test to 40 degrees and his range of motion testing, as well as her complaints of headaches throughout the record.

The mere existence of evidence that *may* support her claims does not warrant a different result. The question is whether the alleged impairments establish only a slight abnormality that has no more than a minimal effect on a claimant's ability to work. Here, despite Plaintiff's complaints of pain, the objective findings were minimal. Plaintiff's examination were often unremarkable, except for subjective findings. AR 190, 194, 197, 203-206, 238, 240, 312. Although a March 2006 lumbar spine x-ray showed small osteophytes, the vertebral height and disc height were normal, there was no osteopenia and the spinal canal was not compromised. AR 198. Cervical spine x-rays taken in October 2006 were normal. AR 310. Plaintiff's headaches and GERD were controlled on medication and often described as "stable." AR 194, 197, 220, 245, 238, 377, 383.

The ALJ's step two finding was supported by substantial evidence and is free of legal error.

C.       Dr. Kalman's Opinion

Plaintiff next argues that the ALJ failed to set forth sufficient reasons for rejecting Dr. Kalman's opinions.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th

Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In giving Dr. Kalman's opinions "little weight," the ALJ first explained that his initial evaluation was documented "with fill-ins on a pre-printed form" and that his remaining treatment notes "consist of a few words every visit." AR 21. While the format of his notes may not necessarily be significant, the lack of information in his notes is a proper basis upon which to question his opinions. For example, as the ALJ notes, most of his treatment notes contain few words and do not include any mental status examinations. Plaintiff saw Dr. Kalman a total of 7 times over the course of 2 years, yet only 2 of those visits contained information gathered from a mental status examination. Notes from the remaining 5 visits only contain Plaintiff's subjective complaints.[2] A lack of supporting clinical findings is a proper basis for rejecting a treating source's opinions. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).

The ALJ also questions Dr. Kalman's opinions based on his belief that Plaintiff's limitations have existed since 2000. AR 21. Indeed, Plaintiff had no mental health treatment with Dr. Kalman prior to 2006. AR 21. As with the majority of his treatment notes, the ALJ also explained that it is "unclear what objective evidence supports" Dr. Kalman's belief that Plaintiff has been disabled since 2000. AR 21. Plaintiff suggests that the ALJ was incorrect in questioning this because she only had to show that her limitations existed since May 26, 2006, her protected filing date. While this may be true, the ALJ was certainly entitled to cite Dr. Kalman's unsupported belief that her limitations existed since 2000 as reason to doubt his opinions as a whole.

The ALJ next cites the discrepancies between Plaintiff's reports to Dr. Kalman and her reports to her treating physician, Dr. Seng, and consultive psychiatrist Dr. Scaramozzino. AR

---

[2] The ALJ found Plaintiff not wholly credible and she has not challenged that finding.

14

21-22. "The claimant told Dr. Kalman that her physical symptoms were the results of her torture by the Khmer Rouge. She did not report this to Dr. Seng." AR 22. During the April 2008 examination, Plaintiff reported that she had chronic neck pain, back pain and shoulder pain "related to the tortures from her imprisonment." AR 369. However, although Plaintiff told Dr. Seng in 1996 that she experienced problems with her voice while "in the labor camps," she never again mentioned her experiences in Cambodia when complaining about her back pain or other alleged physical impairments. When Dr. Seng took a social history in 2002, there was no mention of her alleged trauma in Cambodia. AR 259. Nor did Plaintiff report *any* facts related to her alleged trauma to consultive psychiatrist Dr. Scaramozzino during her 2006 examination. AR 207-211. Instead, Plaintiff's worries appeared related to her concern over losing her income when her daughter was no longer eligible to receive benefits. AR 208. The ALJ was entitled to question Dr. Kalman's findings based on these inconsistences.

Finally, the ALJ questioned why Dr. Kalman only performed a detailed examination in April 2008, "after the Notice of Hearing was issued, less than three weeks before the hearing." AR 22. The ALJ continued, "[a]pparently, this detailed examination was not needed to treat the claimant's impairments for the two years before the month of the hearing." AR 22. Indeed, although Dr. Kalman completed a form when he first saw Plaintiff in 2006 that was more detailed than most of his notes, his April 2008 treatment notes were by far the most extensive. As the ALJ notes, it is curious that Dr. Kalman would conduct such an extensive review almost two years after his first meeting with Plaintiff.

The ALJ's treatment of Dr. Kalman's opinions was supported by substantial evidence and was free of legal error.

D.     Step Five Finding

Plaintiff contends that the ALJ erred in her step five finding by (1) improperly relying on the Grids; and (2) failing to pose a complete hypothetical question to the VE.

In general, where a claimant suffers only from exertional limitations, the ALJ may apply the Grids at step five to match the claimant with the appropriate work. *Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998). The ALJ may apply the Grids in lieu of taking VE testimony only

when the Grids accurately and completely describe the claimant's abilities and limitations. *Id.* (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If a claimant's non-exertional limitations "significantly limit the range of work" he can perform, mechanical application of the grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs existed in the national economy that the claimant could perform. *Desrosiers v. Sec'y of Housing and Health Servs.*, 846 F.2d 573, 577 (9th Cir. 1988). The determination of whether a non-exertional limitation significantly limits the range of work the claimant is able to perform is left to the ALJ. *Id.*

Here, the ALJ acknowledged that Plaintiff's ability to perform work at all exertional levels was compromised by her limitation to simple, repetitive tasks. AR 22-23. She concluded, however, that this limitation had little or no effect on the occupational base of unskilled work at all exertional levels. AR 23. The ALJ therefore relied on Medical-Vocational Guideline 204.00 to find that Plaintiff was not disabled. AR 23.

It was within the ALJ's province to make this determination. *Desrosiers*, 846 F.2d at 577. Such a conclusion is certainly logical given that Plaintiff could perform the full range of unskilled work at every exertional level. In fact, the Grids specifically address such non-exertional limitations. The ability to perform simple, repetitive tasks is consistent with unskilled work. SSR 85-15. An individual with solely non-exertional limitations who is capable of performing the *full range* of unskilled work is capable of performing jobs that exist in significant numbers pursuant to Rule 203.00(a).

Insofar as Plaintiff contends that the ALJ erred by not including a moderate limitation in concentration, persistence or pace in a hypothetical, her argument fails. First, as explained above, the ALJ correctly relied on the Grids, and even though she sought testimony from the VE, she was not required to adopt such testimony.

Second, Plaintiff's argument ignores a fundamental tenet of the social security evaluation process. A claimant's RFC is the most a claimant *can still do despite* his or her limitations. 20 C.F.R. § 404.1545(a)(1). Indeed, claimants will have limitations, but in a majority of instances, they will retain the ability to perform some tasks. The RFC determination therefore assumes the

existence of limitations. Here, then, although Plaintiff had a moderate limitation in maintaining concentration, persistence or pace, the ALJ determined that *despite* this, she could perform simple, repetitive tasks.

The Ninth Circuit has also rejected Plaintiff's argument. In *Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008), the claimant argued that the ALJ's RFC for simple, routine, repetitive work failed to capture a moderate limitation in the ability to perform at a consistent pace. Even though the VE testified that anything more than a mild limitation with respect to pace would preclude employment, the ALJ rejected this conclusion, in part, because it did not address the claimant's RFC. In concluding that the ALJ's RFC properly incorporated the limitations regarding attention, concentration and adaptation, the Court explained:

> The ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him-Dr. Eather's recommended restriction to "simple tasks." This does not, as Stubbs-Danielson contends, constitute a rejection of Dr. McCollum's opinion. Dr. Eather's assessment is consistent with Dr. McCollum's 2005 MRFCA, which found Stubbs-Danielson is "not significantly limited" in her ability to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision." As two of our sister circuits have recognized, an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony. *See Howard v. Massanari,* 255 F.3d 577, 582 (8th Cir.2001) (where state psychologist both identified claimant as having deficiencies of concentration, persistence or pace and pronounced claimant possessed the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately, captured claimant's deficiencies in concentration persistence or pace); *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001) (where ALJ's hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace).
>
> The Eighth Circuit's decision in *Howard* is directly on point. There, the court explicitly rejected a claim that an ALJ's hypothetical describing an ability to do "simple, routine, repetitive work" failed to capture deficiencies in concentration, persistence, or pace. The court noted the state psychologist's findings which concluded that the claimant, despite certain pace deficiencies, retained the ability to do simple, repetitive, routine tasks. *See Howard*, 255 F.3d at 582. The medical evidence by Dr. Eather in the present case reflects the same conclusion.

539 F.3d at 1174.

Based on this Circuit's precedent, the ALJ did not err by finding that Plaintiff was capable of simple, routine tasks despite a moderate limitation in maintaining concentration, persistence or

pace. As in *Stubbs-Danielson*, the evidence demonstrated that Plaintiff could perform simple, repetitive tasks despite the limitation in concentration, persistence or pace. For example, Dr. Scaramozzino found that Plaintiff was able to perform a three-step command successfully and that her concentration was within normal limits. AR 19, 210. He opined that Plaintiff's ability to perform short and simple tasks, as well as detailed tasks, was good. Her ability to maintain concentration was good, and her ability to perform at a constant pace was fair to good. AR 211. Dr. Kalman also found that Plaintiff was only mildly limited in her ability to understand, remember and carry out simple tasks. AR 374.

In her reply, Plaintiff cites an Eleventh Circuit case which she contends "rejected" the argument that a limitation to simple, repetitive tasks takes into account a moderate limitation in concentration, persistence or pace. Plaintiff attempts to generalize the holding in *Richter v.Comm. Soc'y Sec.*, 2010 WL 2017650 (11th Cir. 2010), and a review of the decision reveals that it is on par with *Stubbs-Danielson*. In fact, Richter cites *Stubbs-Danielson* in holding that where there is medical evidence to support a finding that a claimant can perform simple, repetitive tasks, the ALJ did not err in omitting a moderate limitation in concentration, persistence or pace.

The ALJ's finding at step five was supported by substantial evidence and was free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Lis Sam.

IT IS SO ORDERED.

Dated:   **November 29, 2010**               /s/ **Dennis L. Beck**
                                                              UNITED STATES MAGISTRATE JUDGE